**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 21 EAL 2026 |
| | : | |
| Respondent | : | |
| | : | Petition for Allowance of Appeal |
| | : | from the Order of the Superior |
| v. | : | Court |
| | : | |
| | : | |
| JASIR HARRIS, | : | |
| | : | |
| Petitioner | : | |

**CONCURRING STATEMENT**

**JUSTICE WECHT**

I concur in the Court's judgment that the instant Petition for Allowance of Appeal does not meet our *allocatur* standard on its merits.

Nonetheless, the proceedings in this case reveal a problem that is worthy of attention. The process of appellate review in this case deprived a juvenile of a benefit to which the trial court twice deemed him entitled, merely due to the passage of time. Whether the trial court was correct that the juvenile in this case actually was entitled to that benefit is irrelevant. My concern is that, absent any legislative action to provide for such situations within the applicable statutory scheme, cases such as this one will continue to fall into a procedural gap in which the delays attendant to appellate review result in the inability of a court to supply a remedy.

It is important to understand the significance of the age of twenty-one years. The Juvenile Act generally defines a "child" as a person who is under eighteen years old.[1]

---

[1] *See* 42 Pa.C.S. § 6302 (paragraph (1) of the definition of a "child").

However, for purposes of juvenile delinquency, the Act provides that a "child" is a person who "is under the age of 21 years who committed an act of delinquency before reaching the age of 18 years."[2]  Due to this unambiguous language, this Court consistently has held that the juvenile system loses jurisdiction over a person once he or she reaches the age of twenty-one.[3]  After age twenty-one, adult criminal court is the only forum with jurisdiction to prosecute an offender, regardless of his age at the time of the offense.  This statutory regime provides a relatively brief window within which to address criminal acts inside of the juvenile system, at least as compared with the process of appellate review that often takes several years before reaching finality.

The instant case is illustrative.  Jasir Harris was sixteen years old on August 23, 2021.  On that date, he fired a handgun at two police officers in Philadelphia who were investigating a carjacking in which Harris was suspected to have taken part.  As the Commonwealth sought to charge Harris with two counts of attempted murder, it properly proceeded in adult criminal court in the first instance, given that attempted murder is among those serious crimes that are excluded from the statutory definition of a "delinquent act."[4]  Therefore, juveniles who commit that offense generally are charged as adults.  Harris filed a decertification motion seeking his transfer to juvenile court,[5] which

---

[2]      *See id.* (paragraph (2) of the definition of a "child").

[3]      *See, e.g.*, *Commonwealth v. Armolt*, 294 A.3d 364, 365 (Pa. 2023) (holding that "adult criminal courts possess jurisdiction over the prosecution of an individual who is over the age of twenty-one for crimes committed as a juvenile"); *id.* at 372 (noting that the Juvenile Act "plainly extends juvenile jurisdiction to offenders who committed an offense while under the age of eighteen **only** if they are prosecuted before turning twenty-one") (emphasis in original).

[4]      *See* 42 Pa.C.S. § 6302 (paragraph (2)(ii)(I) of the definition of a "delinquent act," excluding from the definition, *inter alia*, an "attempt, conspiracy or solicitation to commit murder").

[5]      *See generally* 42 Pa.C.S. § 6322.

the trial court granted. As was its right, the Commonwealth appealed.[6] The Superior Court reversed, finding that the trial court had failed to meet certain procedural requisites for the transfer to juvenile court.[7] By then, it was April of 2024. Harris was nineteen years old. The clock on the juvenile court's jurisdiction continued to tick. Following the proceedings on remand, the trial court again granted Harris' decertification motion, and it again ordered that Harris be transferred to juvenile court. The Commonwealth appealed again. And again, the Superior Court reversed, finding that the trial court erred in deeming Harris entitled to proceed in juvenile court.[8]

According to my calculation, at the time of the Superior Court's second decision, Harris was twenty years, seven months, and nineteen days old. Tick tock, tick tock. By the time that Harris filed his Petition for Allowance of Appeal with this Court, he was already over twenty-one. The juvenile system already had lost jurisdiction over him. Presently, Harris could be entirely correct that the Superior Court erred, and there is little that this Court could do about it.[9] The remedy to which the trial court twice deemed him

---

[6]     See, e.g., Commonwealth v. Johnson, 669 A.2d 315, 323 (Pa. 1995) (declaring that an order granting decertification to juvenile court is "immediately appealable as of right" by the Commonwealth under Pa.R.A.P. 311(d)).

[7]     See Commonwealth v. Harris, 314 A.3d 914, 922 (Pa. Super. 2024).

[8]     See Commonwealth v. Harris, 1774 EDA 2024, 2025 WL 2049037 (Pa. Super. July 22, 2025) (unreported).

[9]     Conceivably, a court in this situation could order that the defendant be discharged with prejudice, as this Court did in Commonwealth v. Taylor, 309 A.3d 754 (Pa. 2024). Taylor concerned an analogous situation in the other direction—the offender began in juvenile court, and the trial court certified him to adult criminal court, committing a structural constitutional violation along the way. In the interim, the offender turned twenty-one years old. Faced with the need to afford a remedy for the deprivation of the offender's constitutional rights, and lacking any provision in the statutory scheme for such a situation, this Court found that "dismissal of this case is the only remedy under these circumstances." Id. at 793. The instant case presents a similar "aging out" problem, but Harris has not advanced any argument in favor of a full dismissal à la Taylor.

entitled is no longer available, solely due to the amount of time that this case spent on appeal in the Superior Court.

This problem reveals a challenging conflict of interests. There is nothing improper in the Commonwealth's exercise of its right to appeal an adverse decertification order, and it should not be forced to accept a patently erroneous one. Yet, each day that passes while such an appeal sits on the appellate court's docket is one that reduces the juvenile's possibility of accessing the benefits of proceeding in juvenile court. At best, valuable time is wasted; at worst, the Commonwealth might be able to achieve the aim of its appeal merely by running the clock until the juvenile turns twenty-one, rather than demonstrating its right to relief on the merits.

Because time is of the essence, the best balance of these interests would be achieved by expediting the process of appeal in cases such as these. There are a number of paths that could lead toward solutions. But each, in my view, requires some form of clarification, either by judicial interpretation or through the procedural rulemaking process.

First, it should be noted that the statutory decertification provision refers to a form of expedited review. Section 6322(c) provides that the "transfer order shall be subject to the same expedited review applicable to orders granting or denying release or modifying the conditions of release prior to sentence, as provided in Rule 1762 of the Pennsylvania Rules of Appellate Procedure."[10] On the surface, this looks like a viable solution. It at least indicates that the General Assembly was aware of the need for expedition in these circumstances. Nonetheless, it is questionable whether the envisioned procedure is as clear as it sounds. Indeed, given that Section 6322 has not been amended since 1995, it is possible that the statute was intended to refer to a procedure that no longer exists. Rule 1762 says nothing of juvenile matters; it speaks to applications for relief relating to

---

[10]     42 Pa.C.S. § 6322(c).

bail.  Rule 1762 provides no guidance to practitioners in the juvenile arena.  More importantly, Rule 1762 also says nothing of expedited review procedures.  Thus, although Section 6322(c) is indicative of the legislative intent to expedite appeals of decertification orders, the stated intersection between Section 6322 and Rule 1762 is facially confusing, and it is questionable whether the envisioned procedure is adequate in practice.  I would not, however, rule out the possibility that further guidance to practitioners along these lines could be suitable, perhaps through an amendment to Rule 1762.

Of course, the language of Section 6322(c) notwithstanding, appellate procedure is not the domain of the General Assembly, but rather of this Court.[11]  And it is from there that another, likely preferable solution emerges.  Through our procedural rulemaking power, this Court has designated certain appeals involving juveniles as "Children's Fast Track Appeals," which, as the name suggests, entails an expedited process for appellate review.  Notably, in 2025, we accepted the recommendation of our Appellate Rules Committee to amend the definition of a Children's Fast Track Appeal to include orders involving "delinquency."[12]  At first blush, a decertification order may look like it could be "an order involving . . . delinquency," as the goal of the proceeding is to take a criminal prosecution and, in effect, turn it into a juvenile delinquency matter.  However, it is far from clear that the language of the definition encompasses juvenile decertification orders.  As discussed above, the criminal prosecution of a minor charged as an adult is, by

---

[11]    *See* PA. CONST. art. V, § 10(c).

[12]    Pa.R.A.P. 102 (effective April 1, 2025) (defining a "Children's Fast Track Appeal" as "[a]ny appeal from an order involving dependency, termination of parental rights, adoptions, custody, paternity, *or delinquency*, except out-of-home placements under Pa.R.A.P. 1612.") (emphasis added).

definition, *not* a "delinquency" matter because the crimes at issue are expressly excluded from the statutory definition of a "delinquent act."[13]

As things stand, it is unclear whether an appeal from a juvenile decertification order constitutes a Children's Fast Track Appeal. I see no reason why it should not be so, given that decertification is another class of proceedings in which a juvenile's ever-diminishing youth is legally significant. Perhaps, in an appropriate case, this Court could interpret the term "delinquency" in the definition of a Children's Fast Track Appeal to include decertification proceedings. Or, better yet, we could amend the language of Rule 102 to remove the uncertainty.

In the interim, because the instant case does not present a viable vehicle within which to address the problem that I discuss here, I concur in the denial of *allocatur.*

Justice McCaffery joins this concurring statement.

---

[13] *See supra* n.4 and accompanying text.